# United States District Court
# Eastern District of Michigan
# Southern Division

**MSC Software Corp.,**
**Plaintiff,**

    **v.**

**Altair Engineering, Inc., et al.,**
**Defendants.**
_____/

**Civil No. 07-CV-12807**

**Hon. Victoria A. Roberts**

## Recommendations of the Special Master
## regarding the individual Defendants' motion
## of August 4, 2009 (Doc. #327)

## Background

On August 4, 2009, the Individual Defendants filed a "Motion to Permit Individual Defendants to Re-Designate Knowledge Based Articles as Confidential and Review Source Code that they Checked into Plaintiff's Source Code Repository." (Doc. #327). On August 19, the Court referred the motion to me for a recommendation. MSC responded to the motion on August 24 (Doc. #335).

The motion presented two questions:

1. Should this Court redesignate the Knowledge Base documents as Confidential because they were available to the public before November 2007, are currently available to licensed users and do not contain trade secrets of the Plaintiff?

2. Should this Court allow the Individual Defendants to review the Source Code files that Plaintiff has indicated were authored or modified by the Individual Defendants?

On August 27, I sent email to counsel for MSC, with copies to counsel for the defendants, asking for more information about the MSC knowledge base. I received the answers to my questions in an email from Janis Adams, counsel to MSC, on August 28

- 1 -

(attached as Appendix A). Mr. Ludden responded to this email on August 31 (attached as Appendix B), MSC's Master Software License Agreement, sent by Ms. Adams in her email, is attached as Appendix C.

## The Knowledge Base

Counsel for the Individual Defendants complains that MSC has designated the copy of the Knowledge Base produced by MSC as "Highly Confidential/Attorneys' Eyes Only" ("AEO"), and that documents in the Knowledge Base "provide specific information that may be very useful in resolving the claims against the Individual Defendants and that are not equally available anywhere else." Such information would include whether a claimed trade secret was discussed or could otherwise be learned from information that was provided to the public in the Knowledge Base.

Designation of the articles in the Knowledge Base as AEO prevents the Individual Defendants from personally reviewing the material. It can only be viewed by their attorneys and by experts that they employ and have agreed to be bound by the protective order. Those attorneys and experts cannot disclose any AEO information to the Individual Defendants.

Paragraph 7 of the "Second Amended Stipulated Protective Order" (Doc. #321) permits designating as AEO by a party only "Confidential Information or Material which it further reasonably believes constitutes a trade secret or other highly confidential research, development, or commercial information, the disclosure of which to the other party or public would cause the producing party competitive harm."

MSC has indicated that only a subset of the articles in the Knowledge Base (the "*external* Knowledge Base") was accessible outside of MSC. To the extent that articles in the full Knowledge Base are accessible only to MSC's employees or those who have agreed to treat it as confidential information, those articles are properly designated as AEO.

With respect to articles that were in the Knowledge Base prior to November 2007, those articles were available without restriction to any person who registered on MSC's web site. There was no requirement that they had to click on, or otherwise agree to, any requirement to treat the information as a trade secret or as being provided in confidence. Clearly, the designation of any article that was in the Knowledge Base and accessible before November 2007 to any user willing to go through a registration process (possibly

using a pseudonym) should not be AEO. Because the articles were available to the public without meaningful restriction, they should not even be designated as "Confidential" under the protective order.

After November 2007, information in the Knowledge Base was accessible only to MSC customers with valid maintenance contracts. Their access was covered by MSC's "Master Software License Agreement," attached as Appendix C. Pursuant to Paragraph 5.1(viii) of the Agreement, MSC customers "shall not disclose, display, or permit access to or use of the Software or Documentation by persons other than Authorized Users using the Software and Documentation within the scope of the licensee acquired by Customer."  Documentation is defined in Paragraph 2.3 as "user manuals and other written materials, in any form and on any media, provided by MSC for use with the Software." Articles in the Knowledge Base falls under the broad definition of "documentation."

The Master Software License Agreement is generally concerned with the scope of license granted to customers using MSC's software. There are no special requirements for treating documentation as a trade secret, or that it is considered highly confidential information. In fact, the only mention of trade secrets is in paragraph 5.1, where it is in regard to the software and *not* its documentation:

> Customer acknowledges that the Software and its structure organization and source code constitute and contain valuable trade secrets of MSC and/or its suppliers. ... (emphasis added)

Because the articles added to the Knowledge Base after November 2007 comes under the Master Software License Agreement, which provides for its restriction to only authorized persons, but does not treat documentation as a trade secret, those articles should not be designated as AEO but instead as "Confidential" under the protective order.

Finally, if an article is available from a public source, it should not be designated under the protective order as either "Confidential" or AEO.

In summary, I recommend that articles in the Knowledge Base:
- That are available from a public source **shall not be designated** under the protective order,
- That were in the external Knowledge Base prior to November 2007 **shall not be designated** under the protective order,

- That were added to the external Knowledge Base after November 2007 **shall be designated as "Confidential"** under the protective order, and
- That were never available in the external Knowledge Base may remain designated as "Highly Confidential/Attorneys' Eyes Only."

## The Source Code

The Individual Defendants also complain that "Plaintiff has produced the source code files that were checked into its Source Code Repository by different Individual Defendants. This material has been properly designated as AEO by the Plaintiff" but that under the Second Amended Protective Order an Individual Defendant should be allowed to see any source code for which that Individual Defendant was an "originator or author"" (quoting paragraph 15 of the protective order).

MSC contends that that paragraph of the protective order does not apply to AEO information, pertaining only to information designated as "Confidential."

The full text of paragraph 15 is:

> Notwithstanding the provisions of paragraph 4 of this Stipulated Order, documents designated as Confidential Material may be disclosed to any person indicated on the face of the document to be its originator or author, or a recipient of a copy thereof.

Under the protective order AEO information is a form of "Confidential" information. Paragraph 7 states:

> In addition to the protections afforded Confidential Information or Material under this order, a producing party may designate any <u>Confidential Information or Material</u> which it further reasonably believes constitutes a trade secret or other highly confidential research, development, or commercial information, the disclosure of which to the other party or public would cause the producing party competitive harm, <u>as "Highly Confidential/Attorneys' Eyes Only"</u> or by otherwise so designating sections of deposition transcripts or answers to interrogatories that contain such "Highly Confidential/Attorneys' Eyes Only." (emphasis added)

But paragraph 11 imposes additional restrictions on AEO:

> Information designated as Highly Confidential/Attorneys' Eyes Only shall be subject to all the restrictions, limitations and conditions pertaining to

- 4 -

- 5 -

> Confidential Information, <u>and in addition, information designated as Highly Confidential/Attorneys' Eyes Only shall be viewed only by outside Counsel and their expert witnesses and expert consultants retained by Counsel</u> ... (emphasis added)

It is clear that this paragraph trumps paragraph 15, and so I recommend that the Individual Defendants' request to see any MSC source code that they may have authored be **denied**.

/s/ Lee A. Hollaar
Lee A. Hollaar, Special Master
September 1, 2009

# Appendix A

From: "Adams, Janis" <JLAdams@dykema.com>
To: "hollaar@cs.utah.edu" <hollaar@cs.utah.edu>
CC: TOM LUDDEN <tludden@lipsonneilson.com>, "Fayz@MillerCanfield.com"
    <Fayz@MillerCanfield.com>, "Saylor, Larry J." <Saylor@MillerCanfield.com>,
    PHILLIP SELTZER <pseltzer@lipsonneilson.com>, "Hickey, Patrick"
    <PHickey@dykema.com>, "Hermon, James" <JHermon@dykema.com>
Date: Fri, 28 Aug 2009 14:30:42 -0600
Subject: MSC v. Altair:  MSC's Response to Questions Re: Knowledge Base


Special Master Hollaar:

This correspondence is in response to your August 27, 2009 email regarding MSC's external Knowledge Base.   Answers to your questions follow:

1.  With regard to the statement, "From December 2006 to November 2007, MSC's external Knowledge Base was open to registered website users":

    a.  What restrictions, if any, were placed on who could be a "registered website user"?

    **ANSWER: To log in as a registered website user, the end user would be required to establish an account by creating a user name and password.**

    b.  Did it simply require the person to sign up (perhaps with a pseudonym), as is the case with many other websites that require registration?

    **ANSWER: Yes.**

    c.  Or were there other requirements, such as clicking on an agreement?

    **ANSWER: No.**

2.  With regard to the statement, "In November 2007, MSC restricted access to its external Knowledge Base to MSC customers with valid maintenance contracts associated with their MSC licenses":

    a.  What restrictions, if any, beyond being a "customer with valid maintenance contracts" were there for users of the external Knowledge Base after the November 2007 change?

    **ANSWER: As an initial matter, all MSC customers who enter into maintenance contracts associated with their MSC licenses must first sign a Master Software License Agreement ("Agreement"), which contains confidentiality and non-**

**disclosure terms that restrict use of MSC's Software and Documentation to Authorized Users (a copy is attached below).  Pursuant to Paragraph 5.1(viii) of the Agreement, an MSC "[c]ustomer shall notdisclose, display, or permit access to or use of the Software or Documentation by persons other than Authorized Users using the Software and Documentation within the scope of the licensee acquired by Customer."  Documentation, which is defined as "user manuals and other written materials, in any form and on any media, provided by MSC for use with the Software," includes MSC's internal Knowledge Base.  See Agreement, Paragraph 2.3.  Paragraph 6.2 of the Agreement, which pertains to "Maintenance," further states, "[u]pon MSC's request, Customer shall provide information required to verify that Customer and the specific license are entitled to technical support."**

**<<4192_001.pdf>>**
**To access MSC's external Knowledge Base, MSC's customers must first create an account on the website and request that such account be "activated" to allow access to the Knowledge Base.  MSC then internally verifies that the customer agreement at issue is valid prior to activating the account and allowing the customer access.**

   b.  Have those restrictions remained the same through today?

   **ANSWER: Yes.  In July 2009, MSC began issuing customer ID numbers that make it easier for MSC to confirm the customer agreement before activating the account, however, the process of verifying the customer agreement prior to activating the account remains the same**.


3.  What was the URL for accessing the Knowledge Base before November 2007, and what is it now?

   **ANSWER: The URL before and after November 2007 is http://support.mscsoftware.com/kb/**

If you have any additional questions, please let us know.

Janis L. Adams
Attorney
**Dykema**
400 Renaissance Center
Detroit, MI  48243
313-568-6750 (direct)
313-568-6691 (fax)
jladams@dykema.com (email)
www.dykema.com

- 7 -

# Appendix B

From: TOM LUDDEN <TLudden@lipsonneilson.com>
To: TOM LUDDEN <TLudden@lipsonneilson.com>, Lee Hollaar <hollaar@cs.utah.edu>,
     "Adams, Janis" <JLAdams@dykema.com>
CC: "Fayz@MillerCanfield.com" <Fayz@MillerCanfield.com>, "Saylor, Larry J."
     <Saylor@MillerCanfield.com>, PHILLIP SELTZER <PSeltzer@lipsonneilson.com>,
     "Hickey, Patrick" <PHickey@dykema.com>, "Hermon, James"
<JHermon@dykema.com>
Date: Mon, 31 Aug 2009 09:00:00 -0600
Subject: RE: MSC v. Altair:  MSC's Response to Questions Re: Knowledge  Base

Professor Hollaar:

The prior E Mail was inadvertently sent before I had the chance to complete it.

You indicated that " No response should be made by other counsel unless it is to point out an inaccurate answer."  We believe that the response by counsel is at least incomplete.  MSC has produced a spreadsheet that lists what is apparently considers to be Knowledge Base Articles.  Some of those documents remain available to members of the public today.  The most obvious is that the spreadsheet lists a number of conference papers as being part of the Knowledge Base and designated as Attorney Eyes Only.  For example, a paper entitled " Functional Digital Aircraft: Designing Flight Controls" can be found at
http://www.mscsoftware.com/support/library/conf/adams/euro/2001/proceedings/papers_pdf/Paper_22.pdf

We have not made an exhaustive search to determine which papers listed in the spreadsheet and designated as Attorney Eyes Only, but there are at least some Knowledge Base Articles that remain publicly available and not available only to customers with maintenance contracts in the manner described by Ms. Adams in her E Mail to you.

C. Thomas Ludden
Lipson, Neilson, Cole, Seltzer & Garin, P.C.
3910 Telegraph Road, Suite 200
Bloomfield Hills, Michigan 48302
(248) 593-5000
(248) 593-5068 (fax)

**Appendix C**



MSC Agreement No.:

## MASTER SOFTWARE LICENSE AGREEMENT
(North America)

This Master Software License Agreement (this "Agreement") is entered into as of          , 200   (the "Effective Date") by and between **MSC.Software Corporation**, with principal offices at 2 MacArthur Place, Santa Ana, CA 92707 ("MSC") and the customer identified below ("Customer"):

Customer Name:

Customer Address:

Customer Address:

1  **INTRODUCTION.** The terms and conditions of this Agreement apply to the licensing of Software and the provision of Maintenance and Services by MSC to Customer hereunder. From time to time, Software licenses, Maintenance and/or Services may be acquired under this Agreement by Customer's submittal and MSC's acceptance of an Order Schedule referencing this Agreement. Each mutually agreed upon Order Schedule shall be attached hereto and become an integral part of this Agreement.

2  **DEFINITIONS.**

2.1  "**Authorized Users**" means Customer's: (i) employees, and (ii) contractors working on Customer's premises who are not competitors of MSC and have agreed in writing to use restrictions and confidentiality obligations no less restrictive than those set forth in this Agreement. Customer shall at all times be responsible for its Authorized Users' compliance with this Agreement.

2.2  "**Customer Computer**" means the Customer computer specifically identified in the Order Schedule. The Customer Computer runs the license manager program accompanying the Software and is sometimes referred to herein as the "license server".

2.3  "**Documentation**" means the user manuals and other written materials, in any form and on any media, provided by MSC for use with the Software.

2.4  "**Installation Site**" means the Customer facility identified in the Order Schedule where the Customer Computer resides.

2.5  "**Lease License**" means a license of short-term duration (often a year). The specific license term of any Lease License acquired by Customer shall be set forth in the Order Schedule, and if not specified shall be one (1) year, subject to termination as set forth in this Agreement. Unless otherwise stated in the Order Schedule, for a Lease License, Maintenance during the license term is included in the Lease License fee.

2.6  "**Maintenance**" means software maintenance and technical support as described in Section 6.1 and 6.2 of this Agreement.

2.7  "**Order Schedule**" means MSC's *form* Order Schedule or any other mutually agreed upon order schedule which references this Agreement (by citing the MSC Agreement Number above or otherwise) and sets forth, among other things, the Software, Maintenance and/or Services to be provided by MSC to Customer hereunder and the fees to be paid by Customer.

2.8  "**Paid-up License**" means a license which has a term beginning on the date specified in the Order Schedule and continuing perpetually, subject to termination as set forth in this Agreement.

2.9  "**Services**" means training or other services, if any, purchased by Customer under this Agreement pursuant to a mutually agreed upon Order Schedule.

2.10  "**Software**" means the executable code version of the computer program(s) specified in the applicable Order Schedule, including any error corrections and subsequent releases thereto furnished by MSC to Customer under Maintenance.
Additional terms with specific meanings are defined near where they first appear in this Agreement.

3  **GRANT OF LICENSE.** Upon MSC's acceptance of Customer's Order Schedule, MSC grants to Customer, and Customer accepts from MSC, a non-exclusive, non-transferable license to use the Software specified in the Order Schedule (together with accompanying Documentation, if any), solely for Customer's own internal data processing purposes and subject to the terms and conditions of this Agreement. This license shall be in accordance with the limitations of the license type(s) and in the quantities specified in the Order Schedule. The license term(s) (duration) shall be as specified in the Order Schedule, subject to early termination as set forth in this Agreement.

4 **LICENSE TYPES.**

4.1 **Nodelock License:** If Customer acquires a *Nodelock License*, installation and use of the Software will be limited to a single Customer Computer. Software licensed under a Nodelock License may only be accessed or used by Authorized Users who are at the Installation Site.

4.2 **Named User License:** If Customer acquires a *Named User License*, access to and use of the Software will be controlled by a single Customer Computer (license server), and named users may access and use the Software on client machines served by the license server, provided that access to and use of the Software at any one time does not exceed the number of Named User Licenses acquired by Customer for that Software. For certain Software, a named user may have the option to run more than one instance of the Software at any one time, in which case each such additional instance is counted separately and will require an additional Named User License. Customer is responsible for designating and maintaining (in the license manager program that accompanies the Software) the list of individual "named user(s)" authorized to access and use each Software, and may re-edit the list of named users, provided that the number of named users never exceeds the number licensed for each Software. Each named user designated by Customer must be an individual who at all times during the designation meets the definition of an "Authorized User". Group or shared logins are strictly prohibited. In addition to any other restrictions set forth herein, Software licensed under a Named User License may only be accessed or used in the country where the Installation Site is located.

4.3 **Network (Floating) Licenses:** If Customer acquires a *Local Network License, Country Network License, or Regional Network License*, access to and use of the Software will be controlled by a single Customer Computer (license server) and Authorized Users may access and use the Software on client machines served by the license server, provided that access to and use of the Software at any one time does not exceed the number of floating licenses (or "licensing units" in the case of an MSC "Licensing System" – see Section 4.3.1) acquired by Customer for that Software. In addition, Customer shall strictly comply with the following restrictions: (i) if Customer acquires a *Local Network License* (also sometimes referred to simply as a *Network License*), the Software may only be accessed or used at the Installation Site, or if Customer's local area network is shared by a grouping of Customer facilities, then at any Customer facility within ten (10) miles of the Installation Site; (ii) if Customer acquires a *Country Network License*, the Software may only be accessed or used at Customer facilities located within the country where the Installation Site is located; or (iii) if Customer acquires a *Regional Network License*, the Software may only be accessed or used at Customer facilities located in North, Central and South America (MSC's "Americas Region"). Any network (floating) license acquired by Customer hereunder shall be deemed a Local Network License, unless it is expressly identified in the Order Schedule as a "Country" or "Regional" Network License.

4.3.1 **Licensing System-Specific Terms:** If Customer licenses Software under the *MSC.MasterKey* licensing system, *MD Advantage* licensing system, or other similar MSC licensing system (each a "Licensing System") then in addition to the above terms in Section 4.3, the following Licensing System-specific terms apply: Under a Licensing System, Customer purchases "licensing units" (e.g., "*Masterkey Tokens*" under the MSC.MasterKey licensing system, "*MD Advantage License Units*" under the MD Advantage licensing system). A specified number of licensing units are required to run each instance of each Software licensed under the Licensing System. Licensing units acquired under one Licensing System cannot be used to run Software under another Licensing System (e.g., MSC.MasterKey Tokens may not be used to run software available under the MD Advantage licensing system). Software licensed under a particular Licensing System is strictly limited to the software identified in the applicable Licensing System attachment (sometimes referred to as a "Summary Sheet") attached to or incorporated into the Order Schedule or this Agreement. Customer shall not be entitled to use any other software programs under the Licensing System, whether or not such other software programs are marketed by MSC under the same Licensing System.

4.4 **Evaluation License:** If Software is licensed to Customer under an *Evaluation License*, Customer agrees that, NOTWITHSTANDING ANYTHING TO THE CONTRARY ELSEWHERE IN THIS AGREEMENT: (i) Customer may use such Software for evaluation, non-production purposes only; (ii) the term (duration) of the evaluation license shall be as set forth in the Order Schedule but shall in no event exceed ninety (90) days; (iii) such Software is provided on an "as is" basis, with no warranties of any kind; and (iv) MSC has no obligation to provide any Maintenance for such Software.

5 **RESTRICTIONS AND PROTECTIONS.**

5.1 Customer acknowledges that the Software and its structure, organization and source code constitute and contain valuable trade secrets of MSC and/or its suppliers. Accordingly, Customer shall not: (i) reverse-engineer, decompile, disassemble, or otherwise attempt to derive the source code for the Software, or allow any third party to do the foregoing, except to the extent explicitly permitted by applicable law without possibility of contractual waiver; (ii) modify, adapt, alter, translate or create derivative works from the Software or Documentation; (iii) sublicense, rent, loan,

lease, sell, or otherwise transfer all or part of the Software or Documentation to any third party except as expressly permitted under this Agreement; (iv) allow any third party to access or use the Software on a service bureau, application service provider, time-sharing, or similar basis; (v) disable, modify or circumvent the license management system provided with the Software; (vi) remove, alter, or obscure any proprietary notices, labels, or marks from the Software or Documentation; (vii) disclose results of any Software benchmark tests without MSC's prior written consent; (viii) disclose, display, or permit access to or use of the Software or Documentation by persons other than Authorized Users using the Software and Documentation within the scope of the license acquired by Customer; or (ix) otherwise use or copy the Software or Documentation except as expressly permitted under this Agreement. Customer agrees to notify MSC immediately of any unauthorized access to or use of the Software.

5.2   Customer may copy the Software as reasonably required in conjunction with permitted use under this Agreement and for backup purposes. Any such copies made by Customer must reproduce and include, in exact form, all proprietary rights notices. Customer shall maintain records of the location of each copy of the Software, and the location and identity of the computers on which the Software is installed.

5.3   The Software and Documentation, and all worldwide intellectual property rights therein, are and remain the property of MSC and/or its suppliers. Nothing in this Agreement will be deemed to convey to Customer any title, ownership, or other intellectual property rights in or related to the Software or Documentation, and Customer agrees not to assert any such rights. All rights in and to the Software and Documentation not expressly granted to Customer in this Agreement are reserved by MSC and/or its suppliers.

5.4   Upon fifteen (15) days written notice, MSC may audit Customer's installation and use of the Software and Documentation. Customer shall cooperate with MSC's audit and provide reasonable assistance and access to information. In addition to any other remedies available to MSC, Customer agrees to pay within thirty (30) days of written notification any fees and charges applicable to Customer's use of the Software and Documentation in excess of Customer's license rights. MSC shall not be responsible for Customer's costs incurred in cooperating with the audit. MSC shall comply with Customer's reasonable security procedures while on Customer's facilities.

5.5   Except as required by applicable law, or as necessary for Customer to enforce or exercise its rights hereunder, Customer shall not disclose the terms of this Agreement or MSC's pricing in connection with this Agreement to any third-party.

5.6   Customer acknowledges that the obligations of Customer under this Section 5 are of a special and unique character which gives them peculiar value to MSC for which MSC cannot be reasonably or adequately compensated in damages in the event Customer breaches such obligations. Customer therefore agrees that injunctive relief is an appropriate remedy for such breach or threatened breach. Such relief shall be in addition to, and not in lieu of, any other rights or remedies in law or equity to which MSC may be entitled.

6   **MAINTENANCE.**

6.1   If Customer acquires Maintenance for Software, then during the applicable Maintenance term and subject to the terms and conditions of this Agreement, MSC will provide Customer with error corrections and subsequent releases of the Software (and updated Documentation), if any, that MSC, in its sole discretion, makes generally available at no additional charge to its end-users who are on Maintenance. Maintenance shall not entitle Customer to any release, option, module, or future product, which MSC, in its sole discretion, licenses separately or offers for an additional fee. MSC is under no obligation to develop any future programs or functionality. MSC reserves the right to discontinue, in whole or in part, and at any time, offering Maintenance for any Software or platform.

6.2   Further, if Customer acquires Maintenance for Software, then during the applicable Maintenance term and subject to the terms and conditions of this Agreement, MSC will provide Customer with technical support in English via telephone, email and any other means MSC, in its sole discretion, makes generally available from time to time under technical support. Technical support is provided only for the then-current major release and the immediately preceding major release (as designated by MSC) of the Software, running unaltered, and on an appropriate hardware and operating system configuration, as specified in the applicable Documentation. Technical support is limited to reasonable assistance in response to Customer's technical support inquiries regarding: (i) Software installation, (ii) Software errors, and (iii) general questions regarding the usage of Software features. Technical support does not include training, consulting, on-site services, or the provision of engineering judgment for a customer-specific simulation. Upon MSC's request, Customer shall provide information required by MSC to verify that Customer and the specific license are entitled to technical support. To allow MSC to properly address technical issues, MSC may request that Customer provide files and other materials and information.

6.3   If Customer acquires Maintenance, the term and fees for Maintenance shall be set forth in the Order Schedule. Maintenance fees are due and payable in advance of the Maintenance term. Unless otherwise agreed to by the parties in writing: (i) annual Maintenance renewal, if any, will be at MSC's then-current Maintenance prices, and (ii) to purchase

any Maintenance, Customer is required to purchase Maintenance for all Software Customer has licensed from MSC. In the event that Maintenance expires or was not originally purchased, upon the commencement of Maintenance a reinstatement fee will be assessed in accordance with MSC's then current policies. In addition to any other remedies available to MSC, MSC reserves the right to refuse to provide Maintenance if Customer is overdue on any payment obligation under this Agreement.

6.4  MSC's sole and exclusive liability, and Customer's sole and exclusive remedy, for a failure to meet any obligation under Maintenance and failure to cure such deficiency after thirty (30) days written notice will be that Customer may terminate Maintenance for the Software involved and receive a pro-rata return of any Maintenance fees paid for the remaining unused Maintenance period of the Software involved.

## 7  ORDER AND DELIVERY.

7.1  Each Customer order under this Agreement will reference this Agreement on the applicable Order Schedule. MSC reserves the right, in its sole discretion, to accept or reject any Customer order.

7.2  MSC reserves the right to deliver the Software and Documentation either by making them available to Customer for electronic download or by physical delivery. Where the Software and Documentation are made available to Customer for electronic download, MSC is under no further delivery obligation under the Order Schedule, whether physical or otherwise. For electronic delivery, the delivery date shall be when the Software is made available to Customer electronically.

7.3  Where physical shipment is made, MSC shall ship (or cause to be shipped) to the physical delivery address set forth in the Order Schedule one copy of the Software media and one set of Documentation (in the form generally available) for each Software licensed under the Order Schedule. Delivery terms are F.O.B. Shipping Point. Unless otherwise agreed to in writing by the parties, MSC will determine the method of shipment. An additional shipping and handling fee may apply to physical shipments.

7.4  To the extent available, additional Documentation may be purchased at MSC's then-current prices.

## 8  INSTALLATION AND AUTHORIZATION CODES.

8.1  Customer may install the Software only on the applicable Customer Computer identified in the Order Schedule, provided however that in the case of a Network (Floating) License or a Named User License Customer may install the Software on client machines within the scope of the license type acquired, as long as use of the Software is controlled by the Customer Computer (license server). Customer shall be responsible for installation of the Software and all associated costs. Customer may only relocate the Customer Computer with MSC's prior written consent.

8.2  THE SOFTWARE MAY REQUIRE AUTHORIZATION CODES (also known as "LICENSE KEYS") TO RUN. ANY SUCH REQUIRED AUTHORIZATION CODES WILL BE ISSUED IN ACCORDANCE WITH MSC'S THEN-CURRENT LICENSE MANAGEMENT POLICY. Customer shall provide MSC with the host identifier and any other information reasonably required by MSC for each Customer Computer to permit MSC to generate the necessary authorization codes. MSC has no obligation to provide authorization codes for any version of the Software which has been replaced by a more recent version.

8.3  MSC reserves the right to charge MSC's then-current standard hardware transfer fees whenever MSC, in response to a Customer request, generates and delivers to Customer replacement authorization codes due to a change to the Customer Computer. Prior to any such delivery, Customer shall complete, sign and submit MSC's standard hardware transfer request form. MSC has no obligation to provide replacement authorization codes for changes to the Customer Computer if: (i) the applicable Software is not covered by Maintenance; (ii) the Software is not supported on the proposed substitute computer; or (iii) if Customer is in breach of this Agreement.

## 9  FEES, TAXES AND PAYMENT.

9.1  Customer shall pay in full all fees payable under this Agreement, including all fees under any Order Schedule. Fees are exclusive of all applicable sales, use, value added, and other taxes (and all applicable tariffs, customs duties and similar charges), and Customer will be responsible for payment of all such taxes (other than taxes based on MSC's net income), tariffs, duties and charges (and any related penalties and interest), payable in connection with this Agreement or the provision of Software, Maintenance and Services hereunder. If Customer is claiming tax exemption status, Customer must provide a copy of a valid tax exemption certificate.

9.2  All fees will be due and payable in U.S. Dollars within thirty (30) days from the invoice date. Any amount not paid when due will bear interest until paid at the rate of 1½% per month or the maximum rate of interest allowed by applicable law, whichever is less. In addition, Customer will reimburse MSC for any reasonable legal fees and other costs and expenses incurred in collecting past due amounts. Customer's payment obligations under this Agreement and

any Order Schedule are non-cancelable and the sums paid nonrefundable, except as expressly provided in this Agreement.

## 10 WARRANTY; LIMITATIONS.

10.1 MSC warrants that the Software when used as permitted under this Agreement and in accordance with the instructions in the Documentation (including use on a computer hardware and operating system platform supported by MSC) will conform substantially to its associated Documentation for a period of ninety (90) days from the delivery date. Any claim by Customer of a breach of this warranty must be made in writing and within ninety (90) days of the delivery date.

10.2 EXCEPT AS EXPRESSLY STATED IN SECTION 10.1 OF THIS AGREEMENT AND TO THE EXTENT NOT PROHIBITED BY APPLICABLE LAW, NEITHER MSC NOR ANY SUPPLIER OF MSC MAKE ANY WARRANTIES OF ANY KIND, WITH RESPECT TO THE SOFTWARE, DOCUMENTATION, MAINTENANCE, OR SERVICES PROVIDED UNDER THIS AGREEMENT. MSC FURTHER EXPRESSLY DISCLAIMS THE WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NON-INFRINGEMENT. MSC MAKES NO WARRANTY THAT THE OPERATION OF THE SOFTWARE WILL BE UNINTERRUPTED OR ERROR FREE.

10.3 Customer's exclusive remedy, and MSC's sole liability, for Software that does not meet the warranty set forth in Section 10.1 will be, at MSC's option: (i) to correct the non-conforming Software within a reasonable time so that it conforms to the warranty; (ii) to replace the non-conforming Software with another MSC software offering of substantially similar functionality; or (iii) if neither (i) or (ii) is commercially feasible, permit Customer to terminate the license as to the non-conforming Software and refund of the license fees and associated, unused Maintenance fees actually paid to MSC for the non-conforming Software. MSC will have no responsibility or obligation under the foregoing warranty or otherwise with respect to: (a) any Software that has been modified by anyone other than MSC, or (b) failure of the Software caused by Customer or its agents through accident, abuse or misapplication.

## 11 LIMITATION OF LIABILITY.

11.1 Customer acknowledges that the Software along with the Documentation, Maintenance and any Services provided hereunder are only an aid in Customer's development of Customer's products and is not intended as a substitute for sound engineering judgment. MSC will not be liable in any manner whatsoever for the data output obtained through use of the Software. Customer shall, at its own expense, indemnify, defend and hold MSC harmless from and against any claim(s) brought against MSC by a third party arising out of, or related to, Customer's use of the data output obtained from use of the Software.

11.2 NEITHER MSC NOR ITS SUPPLIERS WILL BE LIABLE FOR ANY INDIRECT, CONSEQUENTIAL, INCIDENTAL, EXEMPLARY, PUNITIVE OR SPECIAL DAMAGES (INCLUDING LOST DATA, SAVINGS, PROFITS OR REVENUES) ARISING FROM OR RELATED TO THIS AGREEMENT, EVEN IF MSC HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH LOSS OR CLAIM. MSC'S TOTAL CUMULATIVE LIABILITY ARISING OUT OF OR RELATING TO THIS AGREEMENT, WHETHER IN CONTRACT, TORT, OR OTHERWISE, WILL BE LIMITED TO AND WILL IN NO EVENT EXCEED THE AMOUNT ACTUALLY PAID BY CUSTOMER TO MSC UNDER THIS AGREEMENT FOR THE SPECIFIC ITEM THAT IS THE SUBJECT MATTER OF, OR IS DIRECTLY RELATED TO THE CAUSE OF ACTION. CUSTOMER ACKNOWLEDGES THAT THE FEES REFLECT THE ALLOCATION OF RISK SET FORTH IN THIS AGREEMENT AND THAT MSC WOULD NOT ENTER INTO THIS AGREEMENT WITHOUT THESE LIMITATIONS ON LIABILITY. NO ACTION, REGARDLESS OF FORM, ARISING OUT OF OR RELATING TO THIS AGREEMENT MAY BE BROUGHT BY CUSTOMER MORE THAN ONE YEAR AFTER THE CAUSE OF ACTION ACCRUED. TO THE EXTENT ANY APPLICABLE LAW LIMITS THE SCOPE OF THIS SECTION 11.2, THIS AGREEMENT SHALL BE INTERPRETED TO CONFORM TO SUCH LAW IN A MANNER THAT LIMITS MSC'S LIABILITY TO THE FULLEST EXTENT ALLOWED BY LAW.

## 12 TERM AND TERMINATION.

12.1 This Agreement will be effective as of the Effective Date and will remain in full force until terminated in accordance with this Agreement. Except where otherwise provided in this Agreement, this Agreement may be terminated as follows: (i) by either party upon thirty (30) days prior written notice upon the occurrence of a material breach by the other party of its obligations under this Agreement if such breach remains uncured at the end of the notice period, provided however that no cure period shall apply as to any material breach of Sections 3, 4, 5 and 14 of this Agreement by Customer and MSC may terminate this Agreement effective immediately upon written notice; or (ii) by MSC if Customer makes a general assignment for the benefit of its creditors, is the subject of an involuntary bankruptcy petition, or is otherwise subject to insolvency or dissolution proceedings unless Customer is released from such proceedings within ninety (90) days.

12.2 Upon termination of this Agreement, all licenses and service rights granted to Customer under this Agreement will automatically terminate, and Customer agrees to immediately cease using all Software and Documentation and promptly uninstall and erase all Software and Documentation (and related authorization codes) from all Customer computers. Within fifteen (15) days following termination, Customer shall return or destroy (at MSC's sole option) all originals and copies of the Software (and related authorization codes) and Documentation, and upon MSC's request, certify in writing that it has returned or destroyed (as applicable) all such originals and copies. Termination of this Agreement shall not relieve Customer from any obligation accrued on or before the date of termination. Provisions that survive termination of this Agreement include those in Sections 5, 6.4, 9, 10, 11, 12, 13, 14, 15, 16 and others which by their nature are intended to survive.

## 13  INTELLECTUAL PROPERTY INDEMNITY.

13.1 MSC shall, at its own expense and subject to the terms of this Agreement indemnify, defend and hold Customer harmless from and against any claim(s) brought against Customer by a third party alleging that the Software or any portion thereof as furnished under this Agreement and used within the scope of the licenses granted to Customer infringes any copyrights or U.S. patents, or violates any trade secrets; provided that Customer gives MSC: (i) prompt written notice of such claim; (ii) assistance and information reasonably requested by MSC; and (iii) the sole authority to defend and settle such claim.

13.2 Notwithstanding the provision of Section 13.1, MSC shall have no liability for any infringement arising from: (i) the integration or combination of the Software together with other software, materials or products not integrated or combined by MSC, if the infringement would have been avoided in the absence of such integration or combination; (ii) the use of other than a current unaltered release of the Software available from MSC, if the infringement would have been avoided by the use of the then-current release; (iii) modifications to the Software that were not authorized by MSC or were undertaken at the request of or direction of Customer; or (iv) Customer's use of the Software in a manner that does not comply with this Agreement.

13.3 If the Software becomes, or in MSC's opinion is likely to become, the subject of an infringement claim, MSC may, at its sole option and expense, either: (i) substitute non-infringing software of substantially similar functionality; (ii) modify the infringing Software so that it no longer infringes but remains substantially similar in functionally; (iii) obtain for Customer, at MSC's expense, the right to continue use of such Software; or (iv) if none of the foregoing is commercially feasible, MSC will take back the Software involved, and grant Customer a refund or credit for the unused portion of the license fee and associated unused Maintenance fees actually paid to MSC for the Software involved, using a straight line amortization over sixty (60) months from initial delivery for Paid-up License(s). THIS SECTION 13 STATES MSC'S ENTIRE LIABILITY AND CUSTOMER'S SOLE AND EXCLUSIVE REMEDY FOR INFRINGEMENT CLAIMS AND ACTIONS.

14  **EXPORT.** Customer acknowledges that this Agreement and all orders hereunder are subject to United States laws and regulations relating to export controls. Customer shall comply with all applicable United States and local export control laws and regulations and further agrees not to export or re-export the Software, Documentation, technical data or other deliverables provided under this Agreement without: (i) MSC's prior written approval and (ii) obtaining, at Customer's sole cost and expense, any required authorization from the applicable governmental authority as may be required by law. Upon MSC's request, Customer shall promptly cooperate with MSC and provide MSC with any end-user certificates, affidavits, or other documents reasonably requested by MSC in connection with the exporting or importing of any products or services under this Agreement.

15  **US GOVERNMENT USE.** If Customer is a branch or agency of the U.S. Government or is licensing the Software on behalf of the U.S. Government ("Government"), the following provisions apply to this Agreement. If the Software is supplied to the Department of Defense ("DoD"), it is classified as "Commercial Computer Software" under clause 252.227-7014 of the DoD Supplement to the Federal Acquisition Regulations ("DFARS") (or any successor regulations) and the Government is acquiring only the license rights granted herein (the license rights customarily provided to non-Government users). If the Software is supplied to any unit or agency of the U.S. Government other than the DoD, it is classified as "Restricted Computer Software" and the Government's rights in the Software are defined in clause 52.227-19 of the Federal Acquisition Regulations ("FAR") (or any successor regulations) or, in the case of NASA, in clause 18.52.227-86 of the NASA Supplement to the FAR (or any successor regulations).

## 16  MISCELLANEOUS.

16.1 This Agreement, together with any schedules, exhibits and addenda attached hereto, and any and all mutually agreed upon Order Schedule(s) referencing this Agreement, constitute the complete agreement between MSC and Customer with respect to the subject matter hereof, and this agreement supersedes all prior or contemporaneous agreements or representations, written or oral, with respect to the subject matter. If Customer issues a purchase order or other instrument covering the Software, Maintenance and/or Services provided under this agreement, it is agreed that such

document shall not be applicable and that any acceptance of such document by MSC shall be for acknowledgment purposes only. This agreement may not be modified and the rights and restrictions may not be altered or waived except in a writing signed by the authorized representatives of the parties.

16.2 This Agreement shall be construed and disputes hereunder shall be settled under the laws of the State of California without regard to its conflict of laws principles. MSC and Customer agree to submit to the exclusive jurisdiction of, and venue in, the courts of Orange County, California, USA, in any dispute arising out of or relating to this Agreement. The U.N. Convention on Contracts for the International Sale of Goods will not apply to this Agreement.

16.3 Customer agrees that MSC's third party suppliers may enforce the provisions of this Agreement against Customer to the extent of their interest in the Software and Documentation. Certain Software may contain third party software components which may be subject to terms and conditions of their own clickwrap agreement or other on-line agreement ("End User License Agreement" or "EULA"). Customer is hereby bound by, and shall comply with, the terms and conditions of the applicable EULA with respect to that third party software.

16.4 This Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective successors and permitted assigns. However, Customer may not assign or transfer, by operation of law or otherwise, this Agreement (or any of the licenses or other rights or obligations hereunder), without MSC's prior written consent. Any attempted assignment or transfer in violation of the foregoing will be void. MSC may subcontract a service, or any part of it, to subcontractors selected by MSC, provided MSC will remain responsible to Customer for such subcontractor's performance in accordance with this Agreement.

16.5 If any provision of this Agreement is invalid, the parties agree that such invalidity will not affect the validity of the remaining portions of this Agreement. The parties further agree to substitute a valid provision for the invalid provision which most closely approximates the intent and economic effect of the invalid provision.

16.6 Ambiguities, inconsistencies, or conflicts in this Agreement, will not be strictly construed against the drafter of this Agreement; rather, they will be resolved by applying the most reasonable interpretation under the circumstances, giving full consideration to the intentions of the parties at the time of contracting. The section headings in this Agreement are for convenience only and will not be of any effect in constructing the meaning of the Sections.

16.7 Except for the making of payment under this Agreement, neither party will be held liable or responsible for delay or failure to perform any of such party's obligations under this Agreement occasioned by any cause beyond its reasonable control, including but not limited to war; terrorist acts; civil disturbance; fire; flood; earthquake; acts or defaults of common carriers; governmental laws, acts, regulations, embargoes or orders; or any other cause, contingency or circumstance not subject to such party's reasonable control. The affected party will resume full performance of interrupted obligations as soon as practicable upon cessation of intervening causes.

16.8 All notices will be in writing and will be sent to the recipient's address first set forth in this Agreement (or such other address as the recipient may designate by notice given in accordance with this Section). Notices permitted or required under this Agreement shall be delivered personally (including courier service), by certified or registered mail, return receipt requested, or by confirmed facsimile transmission. Notices shall be effective upon receipt. If notice is sent to MSC, it shall be directed to *Attn: Legal Department*.

16.9 Customer acknowledges and agrees that any and all consulting services performed or to be performed by MSC for Customer are independent of Customer's purchase and use of the Software licenses. Customer further agrees that payment under this Agreement for items purchased hereunder is in no way dependent or in any other way associated with the commencement, completion or delivery of consulting services.

16.10 This Agreement may be signed in two counterparts which together will form a single agreement as if both parties had executed the same document. Signed copies of this Agreement provided via facsimile or otherwise will be deemed binding to the same extent as original documents.

IN WITNESS WHEREOF, the authorized representatives of the parties have executed this Agreement as of the dates set forth below, effective as of the Effective Date.

| CUSTOMER | MSC. SOFTWARE CORPORATION |
|---|---|
| By: _____ (Authorized Signature) | By: _____ (Authorized Signature) |
| Name: _____ | Name: _____ |
| Title: _____ | Title: _____ |
| Date: _____ | Date: _____ |