United States District Court
Eastern District of Michigan
Southern Division

**MSC Software Corp.,**
**Plaintiff,**

**Civil No. 07-CV-12807**

**vs.**

**Hon. Victoria A. Roberts**

**Altair Engineering, Inc., et al.,**
**Defendants.**
_____/

Report and Recommendations
of
Special Master Lee A. Hollaar
on
Referrals in Doc. #388, #389, #390, #400, and #407

## Background

The Court has referred five issues to me as Special Master:

1. MSC's request for an updated version of Altair's Perforce repository and twiki pages for MotionSolve and MotionAutomotive. (Order of October 29, 2009, Doc. #388.)

2. MSC's request for functional copies of MotionView and MotionSolve 10.0 and associated documentation. (Order of October 29, 2009, Doc. #389.)

3. MSC's objections to my previous recommendations (Doc. #240) regarding MSC's request for the directories and repository data for the "flexbody source code." (Order of November 24, 2009, Doc. #407.)

4. MSC's and Altair's objections to my previous recommendations (Doc. #185) regarding superceding the source code protective order, and any objections to the remainder of the Magistrate Judge's Order (Doc. #169). (Order of October 30, 2009, Doc. #390.)

5. Defendants' join motion to re-designate the deposition of Vikram Sohoni. (Order of November 17, 2009, Doc. #400.)

In accordance with the Court's instructions, I have communicated with the parties and considered their objections, responses, and replies, and have attempted to resolve these issues. I am now submitting this report and recommendation to the Court regarding how the issues should be resolved.

## Issues 1, 2, and 3
## Supplementary production of the repository

The first three issues are closely related. In essence, MSC wants a current copy of Altair's Perforce repository and related material to supplement the copy Altair provided September 2008.

Because discovery closed for MSC on February 13, 2009 (Doc. #231), this request is brought as a request for supplementation of Altair's original production under Rule 26. The relevant section is:

> (e) Supplementation of Disclosures and Responses.
>   (1) In General.
> A party who has made a disclosure under Rule 26(a) — or who has responded to an interrogatory, request for production, or request for admission — must supplement or correct its disclosure or response:
>     (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>     (B) as ordered by the court.

### *"Incomplete or incorrect"*

MSC has not indicated that it feels that the previous production of the source code repository and development twiki was "incorrect." That means that any request for supplementation must be because the original production was "incomplete" or that "additional ... information has not otherwise been made known to the other parties during the discovery process or in writing."

The production of the repository was on September 17, 2008, so at the time MSC's discovery closed five months later, it was relatively current.

Altair supplements its source code production by providing MSC's three groups of experts the changed source code every time that Altair intends to release a new version of MotionSolve or MotionView to a customer and submits it for review by me. MSC lists over two dozen different times since January 2008 when its experts received this information, and received copies of any changes submitted to the Special Master prior to that on January 7, 2009. As the Court noted in its Order of April 10, 2008, this is being done "To obviate the need for Altair to continuously supplement its responses." (Doc #256 at 10.)

Of course, any collection of electronic documents that is actively being updated or modified, such as the source code repository or development twiki or even stored email, might be regarded as "incomplete" and therefore require continuous supplementation during the course of litigation. But it is unlikely that Rule 26 contemplates such continual supplementation without an indication in the commentary to the rule, especially in light of the recent revisions to the Rules to better address electronically stored documents.

### *"As ordered by the Court"*

Rule 26 also provides that the Court may order supplementation even if it were not "incomplete or incorrect."

In its order referring this issue to me, the Court directed MSC to particularly address a number of points regarding why it now needs an updated copy of the repository and specifically how MSC's experts intend to utilize it. Instead, MSC replied with general arguments that it needs a new copy of the repository because "the potential of ongoing misappropriation exists and MSC should, as a matter of fundamental fairness, be given the opportunity to investigate."

The Court has made it clear that it will not allow any new claims of trade secret misappropriation into the case. The information that MSC provided in the trade secret templates and elaborated on in its experts' reports of April 2009 sets the metes and bounds for the case. The time for the investigation that MSC proposes has passed.

Even if it hadn't, MSC still can monitor for new misappropriations, albeit not in the form it desires. Using commonly-available software tools, and their knowledge of the organization of Altair's source code learned as they were reviewing the previously-furnished repository for alleged trade secrets in order to prepare their reports, it should not be difficult for MSC's experts to review each copy of source code for new releases to determine if there has been a change to the status quo regarding the trade secrets that they have identified.

MSC also argues that:

> An updated repository also will show what has been removed from the compiled source code – evidence that is every bit as important as what has been newly drafted. Defendants will argue that a number of source code files containing clearly misappropriated MSC trade secrets have been removed or "quarantined" from any released version of the code. The only way to verify that is to review an updated copy of the Perforce repository.

and

> To the extent that Altair is going to claim that it has pulled offending source code out of a released product or that certain trade secrets have not been misappropriated based upon the August 2008 repository, MSC has the right to review the source code to confirm that those statements are true.

Of course, at trial the Court will not simply accept Altair's claim that it has removed a trade secret from the source code, but will require Altair to prove that claim with evidence that has been provided to MSC in discovery. In *Adams v. Teck Cominco Alaska, Inc.*, 231 F.R.D. 578 (D. Alaska 2005), a case brought to my attention by MSC when asked about Rule 26 supplementation, evidence from a 2005 document was excluded because of the defendants' failure to produce the document in supplementary production during discovery.

MSC finally argues that "the updates being produced by Altair to Special Master Hollaar do not show what is being removed from the source code prior to release." In most cases, that is literally true, but misleading. The same common file comparison programs that show what has been added or changed in a file also show what has been removed. (They are like the "redlining" function in Microsoft Word or WordPerfect.)

Depending on what is used as the reference source code file, one can determine what has been removed from the source code in the repository version previously supplied by Altair to

MSC's experts, or from the last time the file was changed as part of a proposed customer release.

In my Report and Recommendations of February 2, 2009 (Doc. #269, adopted by the Court on February 19, 2009, Doc. #278), I noted the difficulty for Altair in producing copies of the repository:

> During the site visit, I reviewed the effort necessary to produce a copy of the repository. First, to assure that the repository remains in a consistent form while it is being copied, all user activity must be stopped. Because the repository stores source code for a number of Altair products besides MotionSolve, that means that use of the repository for those products must also be stopped, and this affects other Altair offices. The repository is of substantial size (35-40 gigabytes, of which about 10 gigabytes are related to MotionSolve), so it takes time to copy it to another Perforce server. After that is done, the source code files and other information regarding products other than MotionSolve must be removed. The repository then must be encrypted using TrueCrypt to make sure that it will be unreadable by others if lost in shipment, and five copies must be produced on external hard disk drives (or very large USB flash memories): three for MSC's experts, one for MSC's outside counsel, and one for me.

I do not believe that MSC has provided sufficient reasons for requiring the additional effort and expense to Altair that would result if the Court ordered a special supplementation.

For the reasons given above, I recommend that the Court **DENY** MSC's Motion to Require Production of Supplemental Repository and Development Material.

Were the Court to order Altair to supplement its production of the source code repository and development twiki, I recommend that it be made clear that the order is being made under Rule 26(e)(1)(B) and not because the past production was "incomplete," and that MSC be ordered to reimburse Altair for all reasonable time and expenses justified to Court.

## Issue 4
## The source code order

In its order of October 30, 2009 (Doc. #390), the Court gave the parties until November 19, 2009, to submit objections to the remainder of the Magistrate Judge's Order. No objections were received.

MSC objected (Doc. #235, November 24, 2008) to Judge Majzoub's adoption of the source code agreement in her Order of June 10, 2008 (Doc. #169), primarily because the original agreement was "a temporary measure 'being entered into solely to expedite the source code comparison in this case.'" Judge Majzoub's order converted it from a temporary measure to the procedures to be followed regarding the handling of source code in this case.

The source code order, along with other orders of the Court, has required that Altair furnish separate copies of its source code to each group of MSC's experts and to MSC's outside counsel, because those experts are not allowed to furnish a copy to another even if that person is

allowed to review it under the protection order. This has resulted in some more work for Altair and MSC's experts. However, MSC has not indicated any substantial hardship that resulted from Judge Majzoub's adoption of the source code agreement as an order in this case eighteen months ago. As noted above, discovery of Altair source code closed on February 13, 2009, and will close for MSC source code on January 29, 2010. Furthermore, MSC's expert reports were submitted by their April 6, 2009, deadline.

I should note that as onerous as the source code order may appear, it is far better that the procedures imposed in cases where I have been a party expert. In one case in particular, the code could only be reviewed by me in the office of the other side's attorney in a different city, only during normal working hours, on a machine that they furnished and configured with no easy way to install the software tools I would normally use, while the other side's attorney was watching what I did, and able only to take with me printouts reviewed by the other side beyond my handwritten notes.

In another case, the other side persuaded the magistrate judge that for purposes of security it was necessary to furnish the source code in the form of image files, one page per file, with no source code control system information (or even filenames and revision dates) provided.

Altair remains under its obligation to furnish copies of the source code provided the Special Master for review to each group of MSC's experts. This substantially mitigates any future problems that may come from the continuation of the source code order.

I recommend that MSC's objections to Judge Majzoub's adoption of the source code agreement in her order of June 10, 2008 (Doc. #235) be **DENIED**.

Regarding my recommendation that the Court issue an order superseding a portion of the source code order or agreement, made in my September 8, 2009, Report and Recommendations, I am **WITHDRAWING** that recommendation. It appears that the portion of the source code order or agreement has not resulted in the problems that concerned me.

Finally, at present Altair is supplying copies of the source code updates provided for review by the Special Master to the groups of MSC experts lead by Mr. Zeidman, Mr. Stackpole, and Dr. McGrath. MSC has indicated that Mr. Zeidman is no longer participating in the review of Altair's source, and therefore no longer should receive a copy of the source code updates unless his role in the litigation changes again. MSC's outside counsel has indicated that he will be sending a letter to Altair confirming this.

## Issue 5
## Re-designating the Sohoni deposition

Altair and the individual defendants jointly request that the deposition of Vikram Sohoni be re-designated from "Highly Confidential/Attorneys' Eyes Only" to "Confidential" in its entirety. MSC substantially agrees with that request, but asks that 14 separate portions be re-designated

only to "All Attorneys." MSC also suggests that some accommodation to allow the individual defendants to have access to those portions may be possible, but that there is no classification within the Second Amended Stipulated Protective Order "allowing individual defendants and general counsel for Altair, but not other Altair employees [who have agreed to the protective order], from viewing such information." Neither Altair nor the individual defendants appear to have responded to that suggestion.

It is clear that nothing was said in the Sohoni deposition that warrants the designation of "Attorneys' Eyes Only" or even "All Attorneys." The transcript of the deposition shows that Defendant Rajiv Rampalli was present throughout the deposition, indicating that at the time nobody felt that information that he was not entitled to receive was being discussed.

The relevant definitions from the Second Amended Stipulated Protective Order are:

> 1. For purposes of this action, "Confidential Information" means information, documents, or things that any party providing discovery, including persons or entities who are not parties to this lawsuit (a "Producing Party"), reasonably believes, in good faith, to contain or constitute trade secrets or other information that is confidential or proprietary to that party.
>
> 7. In addition to the protections afforded Confidential Information of Material under this Order, a producing party may designate any Confidential Information or Material which it further reasonably believes constitutes a trade secret or other highly confidential research, development, or commercial information, the disclosure of which to the other party or public would cause the producing party competitive harm, as "Highly Confidential/Attorneys' Eyes Only" or by otherwise so designating sections of deposition transcripts or answers to interrogatories that contain such "Highly Confidential/Attorneys' Eyes Only."
>
> 12. Highly Confidential/Attorneys' Eyes Only information and material that is not technical, strategic, or future product planning documents shall be designated as viewable by "All Attorneys." Documents or information viewable by All Attorneys can be viewed by all persons otherwise entitled to view Highly Confidential/Attorneys' Eyes Only information and material, and also may be viewed by Doug Campbell, MSC.Software's General Counsel, and Steven Rivkin, Esq., Altair Engineering's General Counsel. ...

Note that the definition of "Confidential Information" includes trade secrets and other confidential or proprietary information. It is only when that information's disclosure would cause "completive harm" that a designation of "Highly Confidential/Attorneys' Eyes Only" is appropriate.

I have reviewed the transcript of the Sohoni deposition in its entirety, paying special attention to those portions that MSC feels should be re-designated "All Attorneys." In my opinion, while a designation of "All Attorneys" might be a possible compromise, it is not appropriate since most of the portions deal with technical information, albeit with very few details. And it does nothing to address the problem of allowing the individual defendants to personally review the deposition in order to prepare their defense.

In many instances, Mr. Sohoni simply indicates that he doesn't know the answer to the questions (and, ironically, suggests sometimes that Mr. Rampalli would be the one who knows

- 7 -

the answer). In other instances, he admits that something is in the public domain, or things that would be obvious such as indicating that one would look at the source code to determine if two integrators use the same formulas.

MSC provides no individual reasons why it considers that these portions would result in "competitive harm" if disclosed to those who have agreed to the protective order and its restrictions on the use of "Confidential Information." Instead, MSC states that "Subsequent testimony and/or documentation may reveal that the trade secret is in fact unknown in the public domain, and MSC should be able to protect the description of its trade secrets even where a witness states that he believes (or does not know whether) they are publicly known."

Because MSC has not shown that any information in the deposition of Vikram Sohoni goes meets the requirements for "Highly Confidential/Attorneys' Eyes Only" (or even "All Attorneys"), I recommend that it be **RE-DESIGNATED** as "Confidential" in its entirely.

None of the parties raised any objections to this recommendation.

/s/ Lee A. Hollaar
Lee A. Hollaar, Special Master
January 11, 2010