UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MSC.SOFTWARE CORPORATION,

       Plaintiff,               CASE NUMBER: 07-12807
                                        HONORABLE VICTORIA A. ROBERTS

v.

ALTAIR ENGINEERING, INC., MARC
KLINGER, ANDREA PERTOSA, STEPHAN
KOERNER, TOM RIEDEMAN, RAJIV RAMPALLI
MARK KRUEGER, and MICHAEL HOFFMAN

       Defendants
and

ALTAIR ENGINEERING, INC.

       Counter-Plaintiff,

v.

MSC.SOFTWARE CORPORATION

       Counter-Defendant.
_____/

**ORDER ADOPTING SPECIAL MASTER'S JANUARY 11, 2010**
**REPORT AND RECOMMENDATION**

**I.    INTRODUCTION**

Before the Court are MSC's Objections to Special Master Hollaar's January 11,

2010 Report and Recommendation (R & R).

The Court **ADOPTS** Special Master Hollaar's recommendations.

**II.    BACKGROUND**

In June 2008, Plaintiff/Counter-Defendant MSC.Software Corporation ("MSC")

filed a First Amended Complaint against Defendant/Counter-Plaintiffs Altair Engineering, Inc. ("Altair"), Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Todd McDevitt, Mark Krueger, and Michael Hoffman ("the Individual Defendants"). (Doc. # 173; First Amended Complaint ("FAC")). MSC and Altair are corporations which develop simulation software that allows consumers to reduce the time and cost of designing and testing products. The software at issue are MSC's Adams/Solver and Adams/Car products, and Altair's MotionSolve and MotionAutomotive.

Broadly speaking, MSC alleges that former employees (the Individual Defendants) left MSC to work for Altair; shortly after joining Altair, they misappropriated MSC's trade secrets relating to Adams/Solver and Adams/Car by disclosing those secrets to Altair. MSC contends Altair misappropriated this information, which it knew to be MSC trade secrets, by incorporating it into MotionSolve's and MotionAutomotive's source code (written computer code).

On January 11, 2010, Special Master Lee Hollaar issued a Report and Recommendation (R & R) (Doc. # 438) regarding requests by MSC for: (1) production by Altair of supplemental source code repository of MotionSolve and MotionAutomotive; (2) an updated copy of the twiki pages for those products; (3) an operational copy of MotionSolve and Motionautomotive 10.0, along with the release notes and help files for those products (Doc. # 395); and (4) "flexbody source code" directories and repository data (*see* Doc. #s 280 and 283). The R & R also addresses MSC's objection (Doc. # 235) to Magistrate Majzoub's June 10, 2008 Source Code Order (Doc. # 169), as well as Altair's request for re-designation of the deposition of Vikram Sohoni from Highly

Confidential/Attorneys' Eyes Only" to "Confidential" in its entirety (Doc. # 397). The Special Master recommends that MSC's requests be denied and that Defendants' request for re-designation be granted.

On February 1, 2010, MSC objected to the Special Master's R & R. (Doc. # 445). In particular, MSC argues: (1) Special Master Hollaar's recommendation that MSC not be provided with an updated copy of the twiki pages, source code repository, or operational copies of MotionSolve/MotionAutomotive 10.1 is incorrect and should be rejected (Doc. # 445 at 2-12); and (2) Special Master Hollaar's recommendation that Magistrate Majzoub's Source Code Order be sustained ignores the defective basis for that Order. (*Id.* at 12-20).

On July 22, 2010 Defendants responded in opposition to MSC's objections. (Doc. # 544). MSC replied to Defendants' response on July 29, 2010. (Doc. # 548).

## III. ANALYSIS

### A. Standard of Review

The Court has said in prior orders that Special Master Hollaar's role is similar to that of a Magistrate Judge and that his recommendations are governed by E.D. Mich. LR 72.1. MSC points out that Fed. R. Civ. P. 53 also governs the appointment and role of special masters. Under both rules the Court applies *de novo* review to objections to the R & R. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 53(f)(3). The Court may accept, reject, modify, in whole or in part, Special Master Hollaar's recommendations. 28 U.S.C. § 636(b)(1).

B.     **Objection # 1: Supplemental Discovery**

MSC challenges Special Master Hollaar's denial of its request to conduct another round of discovery – after a lengthy summary judgment order was entered disposing of the majority of MSC's trade secret claims – in order to receive updated copies of Altair's twiki pages, source code repository, and operational copies of MotionSolve/Motion Automotive 10.0. Altair last provided this information in September 2008.

The Court thoroughly reviewed the Special Master's R & R, the parties' briefs and the authority cited there, as well as its own relevant prior orders; the Court agrees with Hollaar that MSC is not entitled to supplemental discovery under Fed. R. Civ. P. 26(e). Supplemental discovery would serve only to prolong this already extremely protracted litigation. Hollaar's R & R is incorporated here by reference.

Under Rule 26(e)(1)(A), Altair is required to supplement its disclosures only if it learns that a disclosure is incomplete or incorrect. MSC does not suggest that Altair's September 2008 production is incorrect. MSC appears to instead argue that the disclosure is incomplete in light of the passage of time and the evidence it previously found of threatened misappropriation.

While Altair has certainly continued to develop its competing product since September 2008, this Court's prior orders deny MSC the right to re-open discovery to supplement its claims. For instance, on December 22, 2008 the Court ordered Altair to provide MSC experts with certain discovery "[t]o obviate the need for Altair to continuously supplement its responses. . . ." (Doc. # 256 at 10). Rule 26(e) does not place a continuing burden on a party responding to a discovery request to supplement with new information. *See* Adv. Comm. Notes to Rule 26(e) ("Subdivision (e) provides

that a party is not under a continuing burden except as expressly provided"). The Advisory Committee's Notes point out that there are serious objections to the burden continuous supplementation imposes, "especially in protracted cases." *Id.* Hollaar identified the very serious burdens supplementation would impose on Altair. (*See* Doc. # 438 at 4).

On February 5, 2009 the Court entered an Order Denying Altair's Motion to Compel Discovery from MSC. (Doc. # 271). The Court noted that MSC's discovery cut-off date was February 13, 2009. (*Id.* at 6). The Court instructed that MSC's expert reports, due April 6, 2009, were to be a complete and binding list of all alleged trade secrets and that *on or before this date MSC must provide the factual basis of every element of its trade secret misappropriation claim* if not included in the expert reports. (*Id.*). The only reason MSC might want additional discovery is to show that a threatened misappropriation claim has evolved into a misappropriation claim or to show additional instances of misappropriation for the few technical trade secrets that remain in the case. But the Court's February 5, 2009 order precludes MSC from injecting new claims into the case and supplementing the factual basis for the pre-existing claims. As Hollaar notes, the time for factual investigation has passed.

Lastly, on February 19, 2009, the Court adopted the Special Master's February 2, 2009 R & R (Doc. # 278), which stated, in relevant part, "I recommend that Altair *not* be required to produce a new version of the repository for MSC's experts and outside counsel whenever it is about to release a test or beta version of MotionSolve." (Doc. # 269 at 6; see also Doc. # 278 at 3).

The Court is not now reconsidering these Orders, the route through which MSC

might have gotten additional discovery. More importantly, Altair's prior responses to discovery requests were not incorrect or incomplete, Fed. R. Civ. P. 26(e)(1)(A), and the Court finds no other reason to order supplementation, Fed. R. Civ. P. 26(e)(1)(B). Rather, re-opening discovery after the summary judgment phase would likely lead to another round of summary judgment motions, followed potentially by another request by MSC for supplemental discovery, and would significantly and needlessly delay the trial date, which has already been pushed back a number of years.

The Court is not persuaded by the case law MSC cites. *See Adams v. Teck Cominco Alaska, Inc.*, 231 F.R.D. 578 (D. Alaska 2005); *Arthur v. Atkinson Freight Lines Corp.*, 164 F.R.D. 19 (S.D.N.Y. 1995). In *Adams*, the Alaska District Court precluded the defendant from using certain documents that it failed to disclose during discovery to support its defense. 231 F.R.D. at 580-81. If Defendants attempt to use documents or electronically stored information they did not disclose in discovery to support their claims or defenses, MSC can make a similar motion to exclude, which the Court would consider at the appropriate time. At this time, however, *Adams* is irrelevant.

*Arthur* is also largely irrelevant. There, the personal injury plaintiff's attorney was sanctioned for failing to turn over to the defense most of his client's medical records following a car accident; the records were directly related to the plaintiff's treatment and progress. 164 F.R.D. at 21-22. The *Arthur* court emphasized plaintiff's counsel's duty to fully disclose and then supplement disclosure under Rule 26(e) as the plaintiff's medical file expanded approaching trial and after the initial disclosure was made. *Id.* at 20.

*Arthur* is factually very different from this case. Defendants are not dealing with a

simple request for tangible documents readily available and easily obtainable. The updated data sets MSC requests would impose a tremendous burden on Altair and would significantly delay already lengthy litigation. Importantly, unlike in *Arthur*, MSC is not forced to operate without any updates at all. MSC and Special Master Hollaar have been receiving new releases of MotionSolve and MotionAutomotive as they are released to the public. Hollaar says these updates are sufficient to allow MSC's experts to monitor for misappropriation, "albeit not in the form it desires." (Doc. # 438 at 3). The Court sees no reason to question Hollaar's expertise in this regard despite MSC's complaint that the released versions are insufficient for its experts' needs. Thus, the factual scenarios in *Arthur* and this case are simply too divergent for *Arthur* to lend much support to MSC's position. MSC's request for supplementation in the exact form it desires does not outweigh the undue burden placed on Altair and the need to at some point put an end to this seemingly interminable litigation.

      **C.**      **Objection # 2: Magistrate Majzoub's June 2008 Source Code Order**

MSC next challenges Hollaar's recommendation that the Court sustain Magistrate Judge Majzoub's adoption of a Source Code Agreement between Plaintiff and Defendants in her June 10, 2008 Opinion and Order ("Source Code Order"). (Doc. # 169). Hollaar withdraws a prior recommendation, made in a September 9, 2008 R & R (Doc. # 185), that the Court issue an order superseding a portion of Magistrate Majzoub's Order.

MSC says the Source Code Agreement was meant to be a temporary "interim" expert agreement about how Altair's source code would be maintained pending

guidance from the Court. It says adoption of this agreement – which places restrictions on MSC's experts' ability to copy and disseminate Altair source code (and vice versa) – as final and permanent, will complicate communications between MSC and its experts. It says Magistrate Majzoub adopted the agreement as a permanent Source Code Order after Defendants falsely represented in a Reply Brief that the parties had stipulated to entry of the Order. MSC further states that the agreement is not an accurate reflection of the Amended Stipulated Protective Order ("ASPO"), which does not preclude MSC's counsel from possessing source code, nor does it "create a new separate level of 'experts eyes only' protection for source code." (Doc. # 445 at 12-13).

Defendants point out that the Source Code Agreement is not labeled "interim" or "temporary." (*See* Doc. # 445-18, MSC's Objections to Special Master Hollaar's January 11, 2010 R & R, Exh. 16). Rather, the Agreement states, "Unless and until an Order is entered by the Court permitting such duplication, the experts for the respective parties shall not make or cause to be made copies of the source code of the opposing party, or any portion thereof, other than is necessary to perform the duties as an expert in this case." (*Id.* ¶ 1). Magistrate Majzoub's Order stemmed from the Agreement and MSC does not point the Court to a superseding Order.

It is black letter contract law that a court is to give effect to the plain language of an unambiguous agreement. *See, e.g.*, *Steinmetz Elec. Contractors Ass'n v. Local Union No. 58 Int'l Bhd. of Elec. Workers, AFL-CIO*, 517 F. Supp. 428, 432 (E.D. Mich. 1981) ("If the terms of a contract are clear and unambiguous, the intent of the parties is to be gleaned from those terms, without reference to asserted subjective understandings of the parties."); *Wilkie v. Auto-Owners Ins. Co.*, 469 Mich. 41, 61, 664

N.W.2d 776 (2003) ("Well settled principles of contract interpretation require one to first look to a contract's plain language.  If the plain language is clear, there can be only one reasonable interpretation of its meaning, and, therefore, only one meaning the parties could reasonabl[y] expect to apply." (citation omitted)); *Dillon v. DeNooyer Chevrolet Geo*, 217 Mich.App. 163, 166, 550 N.W.2d 846 (1996) ("Contract language is construed according to its plain and ordinary meaning, and technical or constrained constructions are to be avoided.").

Only if contract language is ambiguous, or "unclear or susceptible to multiple meanings," does the Court look to "extrinsic facts along with the terms of the agreement" to discern the parties' intentions.  *Alexander Assocs., Inc. v. FCMP, Inc.*, No. 10-12355, 2012 WL 1033464, at *8 (E.D. Mich. Mar. 27, 2012).  The parties' Source Code Agreement is not ambiguous; it plainly states that it will govern unless and until an Order is entered that supercedes it.  The Agreement is not referred to as "interim" or "temporary."  MSC's subjective belief about its interim nature does not establish the existence of ambiguity.  *See Steinmetz*, 517 F. Supp. at 432 ("[T]he fact that the parties may disagree as to the meaning of contract terms does not necessarily establish the existence of ambiguity in the legal sense.").  Therefore, the Court will not consider the extrinsic facts MSC offers to support its position.

IV.   **CONCLUSION**

The Court **ADOPTS** Special Master Hollaar's R & R (Doc. # 438) in full and **OVERRULES** MSC's objections thereto (Doc. # 445).

9

Accordingly, the Court **DENIES** MSC's Motion to Require Production of Supplemental Repository and Development Materials (Doc. # 395) and **OVERRULES** MSC's objections (Doc. # 235) to Magistrate Judge Majzoub's Source Code Order (Doc. # 169).  The June 2008 Source Code Order is **AFFIRMED**.  Hollaar's objection to the Source Code Order in his September 9, 2008 R & R (Doc. # 185) is **WITHDRAWN** for the reasons provided in his January 11, 2010 R & R (Doc. # 438 at 5).  Thus, Altair's objections to Doc. # 185 (Doc. # 191) are **MOOT**.

MSC does not object to the Special Master's recommendation regarding re-designating the Sohoni deposition; thus, Defendants' Motion to Re-designate Dr. Sohoni's Deposition Transcript as Confidential (Doc. # 397) is **GRANTED**.

MSC does not object to the Special Master's recommendation regarding its request for the directories and repository data for the "flexbody source code;" therefore, Master Hollaar's Third R & R (Doc. # 280) is **ADOPTED** and MSC objections to that R & R (Doc. # 283) are **DENIED**.  Even if MSC did object, for the reasons the Court adopts Hollaar's R & R regarding the request for updated source code and twiki pages, it would overrule MSC's objections related to the flexbody data.

**IT IS ORDERED**.

　　　　　　　　　　　　　　　　　　　S/Victoria A. Roberts  
　　　　　　　　　　　　　　　　　　　Victoria A. Roberts  
　　　　　　　　　　　　　　　　　　　United States District Judge

Dated:  April 18, 2012

| |
|---|
| The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on April 18, 2012.<br><br>S/Linda Vertriest<br>Deputy Clerk |