UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MSC.SOFTWARE CORPORATION,

                Plaintiff,                CASE NUMBER: 07-12807
                                            HONORABLE VICTORIA A. ROBERTS

v.

ALTAIR ENGINEERING, INC., MARC
KLINGER, ANDREA PERTOSA, STEPHAN
KOERNER, TOM RIEDEMAN, RAJIV RAMPALLI
MARK KRUEGER, and MICHAEL HOFFMAN

                Defendants

and

ALTAIR ENGINEERING, INC.

                Counter-Plaintiff,

v.

MSC.SOFTWARE CORPORATION

                Counter-Defendant.
_____/

## ORDER ADOPTING IN PART SPECIAL MASTER HOLLAAR'S JUNE 9, 2010 REPORT AND RECOMMENDATION

**I.**    **INTRODUCTION**

Before the Court are MSC's two Objections to Special Master Hollaar's June 9,

2010 Report and Recommendation (R & R). (Doc. # 516). The first objection relates to

Janet Netz's Expert Report and Altair's antitrust counterclaim; Altair voluntarily

dismissed the antitrust counterclaim and Netz is no longer an expert witness.

Accordingly, that objection is **MOOT**.

1

The remaining objection is that Special Master Hollaar erred in holding that James T. Schmid's (Altair's damages expert witness) report rebutting the damages report of R. Bruce Den Uyl (MSC's damages expert witness) should be redesignated as "Highly Confidential/All Attorneys" and "Highly Confidential\Attorneys' Eyes Only" for both sides.

## II.   BACKGROUND

On July 14, 2009, the Court entered a Second Amended Stipulated Protective Order ("Protective Order"), which governs the parties' confidentiality designations for discovery materials.  (Doc. # 321).  The Order describes three categories of protection: "Confidential"; "Highly Confidential/All Attorneys" (referred to here as "All Attorneys"); and "Highly Confidential/Attorneys' Eyes Only" (referred to here as "AEO").

This dispute centers around the proper confidentiality designation for Altair expert witness James T. Schmid's Expert Witness Report regarding MSC's trade secret misappropriation damages; it rebuts the Expert Report of MSC damages expert R. Bruce Den Uyl.  Mr. Den Uyl's report says MSC is entitled to damages at a fifty percent (50%) royalty rate to be applied to Altair's MotionSolve and MotionView revenue.

Altair originally designated the report AEO.  In its letter to MSC, Altair said, "Mr. Schmid's Report contains references to excerpts from an array of documents and deposition testimony, many of which are subject to designations under the Second Amended Stipulated Protective Order (Doc. 321) that are disputed by MSC or ambiguous because the circumstances of the deposition did not fit one of the existing categories of designation."  (Doc. # 490, Mar. 29, 2010 Letter).   But, Altair offered to change the designation to All Attorneys if MSC agreed.  (*Id.*).

2

MSC did not accept this offer; instead, it insisted that the information contained in the report was sensitive to MSC, not Altair.  (Doc. # 490, Mar. 31, 2010 Letter).  It asked that the report be re-designated as Confidential with respect to MSC only, so that "appropriate personnel" at MSC could review it.  With respect to Defendants, the document should retain a higher level of protection because of the MSC AEO information contained there, MSC said.  MSC offered, "If Altair believes there are portions of this report of Mr. Schmid that contain Altair AEO information, please identify those portions and we can redact them for the time being until the issue gets resolved and disclose the balance of the report to our client."  (*Id.*).

Altair declined to re-designate the report. Altair said MSC's refusal to agree to a re-designation from AEO to All Attorneys in favor of a Confidential designation for MSC and an AEO or All Attorneys designation for Defendants, "seeks to impose an asymmetry to 'even out' a previous asymmetry that never actually existed."  (Doc. # 490, Apr. 2, 2010 Letter).  Altair did not indicate what in the report it believed to be sensitive to Altair.

On April 15, 2010, MSC wrote the Court regarding a number of issues.  One issue was Altair's refusal to re-designate Mr. Schmid's rebuttal report on trade secret damages as Confidential with respect to MSC.  (Doc. # 490, April 15, 2010 Letter).  MSC stated, "MSC personnel involved in this litigation should not be precluded from reviewing any reports which contain MSC AEO information and do not contain Altair AEO information."  (*Id.*).

The Court referred the matter to Special Master Hollaar for a recommendation.  (Doc. # 489). On June 10, 2010, the Special Master submitted an R & R to the Court.

3

(Doc. # 511).  He noted that "MSC questions aspects of the current designations of all five expert reports submitted by the Defendants: Linda Petzold, James McInerney, Janet Netz, and two reports by James T. Schmidt (sic), one a response to MSC's claimed damages and one on damages for Altair's counterclaim."  (Doc. # 511 at 2). Hollaar's R & R addresses all five report designations; however, MSC's only objection is to his resolution of the parties' dispute regarding Schmid's damages response.  The Special Master recommends that the rebuttal report be designated All Attorneys for both sides, with the exception of a small portion, which he identified as AEO. (*Id.* at 3-4).

    In its objection, MSC says Mr. Schmid's damages response should be designated Confidential for MSC because "Mr. Schmid's rebuttal report . . . refers only to MSC documents and data – it contains no information that reasonably could be considered to be sensitive commercial information of Altair that would be entitled to protection from MSC under the [Protective Order]."  (Doc. # 516 at 8).  MSC contends that Hollaar's designation "ignores the reality that the substance of Mr. Schmid's report is based exclusively upon MSC documents and data." (*Id.*).  "Maintaining Mr. Schmid's report as All Attorneys or AEO under the [Protective Order] as to MSC simply deprives MSC from access to its own information (albeit in another form) to no purpose.  It simply makes no sense," MSC complains.  (*Id.* at 8-9).

    In response, Altair says the corporate parties have always had equal access to documents under the Protective Order, and the Court gave *the individual Defendants* access to MSC expert and factual basis reports by designating those documents Confidential for Defendants only. (Doc. # 528 at 3-4).  Altair says the only way for the individual Defendants to learn the nature of the claims against them was to re-designate

4

the expert and factual basis reports as Confidential, whereas the corporate parties could

learn of the claims through an All Attorneys designation.  (*Id.* at 4).

 The least restrictive designation, Confidential, refers to "information, documents,

or things that any party providing discovery, including persons or entities who are not

parties to this lawsuit ('Producing Party'), reasonably believes, in good faith, to contain

or constitute trade secrets or other information that is confidential or proprietary."  (Doc.

# 321 at ¶ 1).  Material that is Confidential may be disclosed to the parties to the

litigation, including their officers and employees, among others.  (*Id.* at ¶ 4).

 The most restrictive designation, AEO, refers to "Confidential Information or

Material which [the designating party] further reasonably believes constitutes a trade

secret or other highly confidential research, development, or commercial information,

the disclosure of which to the other party or public would cause the producing party

competitive harm."  (*Id.* at ¶ 7).  In addition to the restrictions placed on Confidential

Information, AEO Material may by viewed only by outside counsel, their expert

witnesses, expert consultants, and court reporters required to transcribe designated

testimony.  (*Id.* at  ¶ 11).

 The intermediate designation, All Attorneys, refers to AEO Information "that is not

technical, strategic, or future product planning documents."  (*Id.* at ¶ 12). Materials

designated All Attorneys can be viewed by those persons who can view AEO

Information, as well as Doug Campbell (MSC's General Counsel) and Steven Rivkin

(Altair's General Counsel). (*Id.*).  Importantly, neither AEO nor All Attorneys materials

can be viewed by the parties.

 The Protective Order sets forth the route through which a party can challenge

another party's designation:

> Any party may at any time move this Court for an order changing the designated status of Confidential Information or Material or otherwise relieving the party from any restrictions in this Protective Order.  That party shall not make such motion, however, until it requests the Producing Party in writing to change the designated status of Confidential Information or Material or otherwise relieve the party from any other restrictions contained in this Protective Order, and the Producing Party refuses to grant the party's request.  The Producing Party's failure to respond to such a request within five business days shall be deemed to be a refusal.  Pending resolution of the motion, the involved item shall be treated in accordance with its designated status.

(*Id.* at ¶ 21).

### III.    APPLICABLE LAW

The Federal Rules of Civil Procedure allow broad discovery.  Rule 26(b)(1) provides for "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense–including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter."  Fed. R. Civ. P. 26(b)(1).  Furthermore, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  *Id.*

However, "[i]n the face of the broad scope of permissible discovery, Fed. R. Civ. P. 26(c) provides a mechanism, available in appropriate cases, to limit the discovery or dissemination of certain information."  *Gillard v. Boulder Valley Sch. Dist. RE-2*, 196 F.R.D. 382, 385 (D. Colo. 2000).  Under Rule 26(c), a party may move for, and a court may enter, a protective order that limits the discovery and/or dissemination of information.  The Rule specifies a number of ways in which the court can restrict discovery; among them, the Court, for good cause, can enter an order "requiring that a

6

trade secret or other confidential research, development, or commercial information not

be revealed or be revealed only in a specified way . . . ."  Fed. R. Civ. P. 26(c)(1)(G).

Courts utilize at least three types of protective orders to limit the discovery of

confidential or proprietary information.  *Gillard*, 196 F.R.D. at 385.  First, there is the

particular protective order.  *Id.*  This is the most narrow kind of protective order; it covers

only specific, identified information.  *Id.*  In cases with more than a few sensitive

documents, such particularized orders are inefficient and burdensome because they

require the court to review and make a determination about each piece of information

for which protection is sought.  *Id.* at 385-86.

The broadest form of protection, the umbrella protective order, designates all

discovery produced in the litigation as protected without prior review and independent

designation.  *Id.* at 386.  Umbrella protective orders are generally disfavored.  *Id.*

Between these two extremes is the type of protective order at issue here–the

blanket protective order.  *See id.*  These place the burden on the parties to determine

what materials are entitled to protection.  *Id.*  "Normally, a blanket protective order

requires that counsel for a producing party review the information to be disclosed and

designate the information it believes, in good faith, is confidential or otherwise entitled to

protection."  *Id.*  If the party receiving the disclosure disagrees with the producing party's

designation, it may object.  *Id.*  If the parties cannot resolve the disagreement, the Court

will review the materials in light of the parties' protective order.  *Id.*

As was done here, parties in civil cases often stipulate to the entry of a blanket

protective order.  *Id.*  "Blanket protective orders serve the interests of a just, speedy,

and less expensive determination of complex disputes by alleviating the need for and

delay occasioned by extensive and repeated judicial intervention." *Id.* These protective orders are common in large-scale litigation involving massive document exchanges. *See Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Grp., Inc.*, 121 F.R.D. 264, 267-68 (M.D.N.C. 1988).

Although a blanket protective order allows all documents to be designated as confidential–or in this case, at varying levels of confidentiality–a party must agree to invoke the designation only in good faith. *Id.* at 268.  When a party to a blanket protective order disputes the level of protection designated by the producing party, the burden is on the producing party to justify its designation. *Foley v. Signator Investors, Inc.*, No. 03-2099-KHV, 2003 WL 22844110, at * 2 (D. Kan. Nov. 25, 2003); *Gillard*, 196 F.R.D. at 386; *Parkway Gallery Furniture*, 121 F.R.D. at 268.  To meet this burden, the designating party must establish "good cause" for the level of protection selected. *See* Fed. R. Civ. P. 26(c)(1).

As a district court in Kansas explained, "a stipulation cannot raise a presumption of protection." *Adams & Assocs., LLC v. Dell, Inc.*, No. 1:05-CV-64 TS, 2006 WL 4523602, at *2 (D. Kan. June 12, 2006).  "A stipulated protective order cannot bestow any weight on a party's unilateral designation of protection.  Allowing mechanical designation by a producer is a convenient and justifiable mechanism to move litigation along, but the designating party retains the fundamental responsibility to 'show cause' for protection." *Id.*  "Once the designation has been challenged, it is the burden of the designating party to justify the need for enforcement of the protective order in accordance with its terms." *Id.* (citation and quotation marks omitted).

Moreover, when the need for a certain level of protection is premised on the

existence of confidential information, the designating party must make a *particularized showing* that the information sought to be protected is entitled to that protection.  *Cf. Standard Space Platforms Corp. v. United States*, 35 Fed. Cl. 505, 507 (Cl. Ct. 1996) (citation omitted) (discussing the standard for a party moving for a protective order based on the alleged existence of confidential discovery material).  The producer must demonstrate that disclosure "will result in 'a clearly defined and very serious injury to its business.'"  *Id.* (quoting *United States v. Exxon Corp.*, 94 F.R.D. 250, 251 (D.D.C. 1981)).  "Moreover, the requisite showings must be made with specific facts, not mere conclusory allegations of confidentiality and/or business harm."  *Id.*

## IV.    ANALYSIS

### A.    Standard of Review

The Court has said in prior orders that Special Master Hollaar's role is similar to that of a Magistrate Judge and that his recommendations are governed by E.D. Mich. LR 72.1.  Fed. R. Civ. P. 53 also governs the appointment and role of special masters. Under both rules the Court applies *de novo* review to objections to the R & R.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 53(f)(3).  The Court may accept, reject, modify, in whole or in part, Special Master Hollaar's recommendations.  28 U.S.C. § 636(b)(1).

### B.    Altair does not show "good cause" why Mr. Schmid's damages response should be designated All Attorneys with respect to MSC.

Altair does not meet its burden to show "good cause" for maintaining the current AEO designation, or for placing an All Attorneys designation on Mr. Schmid's damages response with respect to MSC.

In his R & R, Special Master Hollaar summarizes Defendant's argument: "Altair

9

indicates [it designated Mr. Schmid's report AEO] because it 'contains references to or excerpts from an array of documents and deposition testimony, many of which are subject to designations under the Protective Order.'" (Doc. # 511 at 3).  However, without analyzing the contents of the report or explaining his reasons, the Special Master recommends that the report be redesignated as All Attorneys, except for Attachment 4 and page 15, which he says should retain its designation as AEO because of the information "strategic" to MSC contained there.

The problem with Altair's argument is that at no point does it provide more than a conclusory statement that Mr. Schmid's damages response contains information sensitive to Altair.  MSC asked Altair to identify the information it was concerned about and offered to redact that information from the report.  Altair's response did not address the contents of the report, or why it should not be designated Confidential as to MSC.

Altair's initial email to MSC makes a vague reference to "an array of documents and deposition testimony . . . subject to designations under the [Protective Order]" it believes are mentioned in the report.  (Doc. # 490, Mar. 29, 2010 Letter).  At no point, however, does Altair identify what documents and deposition testimony it is concerned about and why it feels those materials require AEO or All Attorneys designation for MSC; nor does it say which designations those materials are subject to under the Protective Order.  Altair's conclusory assertion–wholly lacking in particularized factual support–is insufficient to carry its burden to show good cause for the designation it seeks.  *See Standard Space Platforms*, 35 Fed. Cl. at 507.

**C.   Altair's "asymmetry" argument does not warrant overruling MSC's objection to the R & R.**

10

Altair places much emphasis on what it refers to as the "asymmetry" of the dual designation MSC proposes, that is, an All Attorneys and AEO designation for Mr. Schmid's report as it relates to Defendants, and a Confidential designation with respect to MSC. However, MSC correctly notes that this Court placed a similar dual designation on discovery MSC provided to the individual Defendants in the interest of due process, so that the individual Defendants would be apprised of, and able to help prepare their defense of, the claims against them. (*See* Doc. #s 276, 289).

MSC explores the genesis of this Court's dual-designation order in an email to Professor Hollaar. (Doc. # 528-4; Ex. 3). It argues that its corporate officers and employees have the same due process rights as the individual Defendants and that because MSC, as a corporation, has no independent consciousness, its officers are the ones in the position to prosecute the trade secret case and defend against the counterclaim. (Doc. # 542 at 5). At least one other court has recognized that a protective order which denies an officer of a competitor corporation access to documents produced during discovery may result in the denial of due process. *See Standard Space Platforms*, 35 Fed. Cl. at 509 ("[O]n this record, defendant has failed to show good cause why plaintiff's president should be precluded from participating in the preparation and prosecution of its case. Indeed, to deny plaintiff the right to have its own president assist in its litigation . . . could well border on a denial of due process.").

The Protective Order does not specifically mention dual designation, but that does not preclude the scheme when justified by the circumstances. Nowhere does the Protective Order indicate that dual designation is never appropriate. Altair's suggestion that MSC's request is not properly before the Court is therefore incorrect. Altair says

11

MSC should have filed a motion *for relief from* the Protective Order.  However, it is MSC's position that its request is *pursuant to* the Protective Order and that it, therefore, need not seek relief from that Order.  Indeed, MSC makes a sound argument pursuant to the express terms of the Order: material is entitled to the AEO designation only if it "constitutes a trade secret or other highly confidential research, development, or commercial information, the disclosure of which to the other party or public would cause the producing party competitive harm . . ."  (Doc. # 321 at ¶ 7); material is entitled to the All Attorneys designation only if it is AEO information "that is not technical, strategic, or future product planning documents . . . ."  (*Id.* at ¶ 12).  MSC contends Altair makes neither showing.

The relevant inquiry is not whether the Protective Order explicitly permits dual designation, but whether the designating party meets its burden to show good cause for a particular designation in the face of an objection.  Altair does not even attempt to demonstrate that information contained in the report constitutes an Altair trade secret or highly confidential research, development, or commercial information, the disclosure of which would cause Altair competitive harm.  Thus, Altair does not meet its burden; the inquiry ends there.

**V.    CONCLUSION**

Special Master Hollaar recommended that the "damages response report of Mr. Schmid be Redesignated as 'Highly confidentrial/All Attorneys' except for Attachment 4 and page 15, which should retain their designation as 'Highly Confidential/Attorneys' Eyes Only."  (Doc. # 511 at 4).

The Court **DECLINES TO ADOPT** the part of the recommendation that concerns

MSC.

The Court **ADOPTS** Special Master Hollaar's recommendation that the Court designate the majority of the report All Attorneys for Defendants, and Attachment 4 and page 15 AEO for Defendants.  Those designations will apply to Altair and the individual Defendants.  For MSC, the entire report is only Confidential.

MSC's objection # 1 is **MOOT**; the antitrust counterclaim has been dismissed and Janet Netz was a witness only with respect to that claim.

**IT IS ORDERED.**

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  May 17, 2012

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on May 17, 2012.

S/Linda Vertriest
Deputy Clerk

13